UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LORENZO FLORES** and **SIMBA FLORES** on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**TRUSSWAY MANUFACTURING, LLC,**<br><br>*Defendant*. | **Case No. 4:23-cv-02509** |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I. STATEMENT OF ISSUES ................................................................................................ 1

II. INTRODUCTION .............................................................................................................. 1

III. BACKGROUND ................................................................................................................ 3

   A. The Litigation ............................................................................................................. 3

   B. Negotiation and Settlement ........................................................................................ 4

   C. The Settlement ........................................................................................................... 4

   D. Preliminary Approval and Notice .............................................................................. 6

IV. LEGAL STANDARD ........................................................................................................ 8

V. ARGUMENT ..................................................................................................................... 9

   A. The Settlement is fair, reasonable, and adequate ....................................................... 9

      i. The Court should presume the settlement is "fair, adequate, and reasonable" .. 10

      ii. Plaintiffs and their attorneys represented the class "adequately" ...................... 10

      iii. This case's risks, complexity, and expense justify settlement at this stage ....... 11

      iv. Class counsel recommends the settlement .......................................................... 13

      v. The method for delivering relief supports approval ........................................... 13

      vi. The settlement treats class members "equitably" ............................................... 14

      vii. Class members have not objected to the settlement ........................................ 14

   A. The Court should finally certify the settlement class .............................................. 14

   B. The Notice Plan Complied with Rule 23 and Due Process ..................................... 15

VI. CONCLUSION ................................................................................................................ 16

This motion comes before the Court on Plaintiff's Unopposed Motion for Final Approval of a class settlement in this matter. Plaintiffs respectfully move this Court for entry of an Order granting Plaintiffs' Motion for Final Approval. This Motion is based upon: (1) this Motion and the following supporting memorandum; (2) Class Counsel's Declaration; (3) Teresa Y. Sutor of RG/2's Declaration; (4) the Settlement Agreement; (5) the records, pleadings, and papers filed in this Action; and (6) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing.

## I.   STATEMENT OF ISSUES

1. **Whether the Settlement is fair, reasonable, and adequate?**

   Fed. R. Civ. P. 23(e) and *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

2. **Whether the Court should finally certify the settlement class?**

   Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b).

3. **Whether the notice plan complied with Rule 23 and due process?**

   Fed. R. Civ. P. 23 and *Amchem Prods. v. Windsor*, 521 U.S. 591, 617.

## II.   INTRODUCTION

Plaintiffs Lorenzo Flores and Simba Flores ("Plaintiffs) move the Court to approve their class action settlement with Trussway Manufacturing LLC ("Trussway" or "Defendant") as "fair, adequate, and reasonable." With this settlement, Plaintiffs achieved what they set out to accomplish with this case. Following Trussway's data breach in March 2023, Plaintiffs demanded that Trussway compensate class members for the losses they suffered, protect them from the losses they may suffer, and improve its data security

1

practices. If approved, the settlement will deliver just that, securing four benefits for the class.

First, it guarantees Trussway will pay all claims for lost money and time, up to $500 for "ordinary" losses, $75 for lost time, and $2,500 for "extraordinary" losses stemming from the breach. And the settlement secured this relief without capping what Trussway must pay, meaning it will pay every approved claim in full. Second, Trussway offered class members credit and identity monitoring to mitigate their chances for suffering identity theft and fraud. Third, Trussway agreed to improve its cybersecurity, addressing the problems that led to its breach and improving its systems to prevent breaches. And fourth, Trussway paid to administer the Agreement, Plaintiffs' attorney's fees and costs, and service awards to Plaintiffs—all without diminishing the benefits to the class.

Through the parties' notice program, they directly notified 93% of class members about the settlement via U.S. Mail, providing them a chance to claim benefits either online or by mail. In response, **no** class members opted out or objected to the settlement.

As a result, the settlement is "fair, adequate, and reasonable," and the Court should approve it. Indeed, the Court should presume the settlement satisfies Rule 23(e) and the Fifth Circuit's standards for approval because the parties negotiated and administered the settlement at "arm's length." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources"). This is not to mention that the risks in litigating this matter through discovery and trial merit settlement at this stage, as Plaintiffs had the facts needed to evaluate their case's strengths

2

and weaknesses and the relief that would best benefit the class. In other words, the results achieved under the circumstances here exceed what Rule 23(e) and the Fifth Circuit expect from Plaintiffs and their counsel in approving this settlement.

### III.   BACKGROUND

#### A.   The Litigation

Trussway is a manufacturer of floor trusses, roof trusses, and pre-assembled door and window openings. Doc. 1 ("Compl."), ¶ 19. As a result, it collects and stores the Private Information of thousands of its current and former employees in its systems. *Id*. ¶ 2, 20.  In March 2023, Trussway experienced a ransomware attack where an unauthorized actor viewed and obtained files stored on certain servers in the Trussway network which contained Personal Identifiable Information ("PII) and Personal Health Information ("PHI") (collectively the "Private Information"), of Trussway's current and former employees, including names, addresses, Social Security numbers, dates of birth, health enrollment information, health insurance policy numbers, driver's license information, passport numbers, other government issued identification numbers, financial account information, and the medical information of those who filed a claim for worker's compensation or short-term disability. *Id*. ¶¶ 2, 25, 27. In collecting this data, Plaintiffs alleged Trussway accepted a duty to protect it under Texas law and internal policy. *Id*. ¶ 23. But despite acknowledging its duty, Plaintiffs alleged Trussway breached it by failing to implement the security safeguards needed to fulfill it. *Id*. ¶¶ 25, 33.

For those reasons, Plaintiffs sued Trussway claiming that it failed to protect their Private Information using "reasonable security measures." *Id*. ¶ 33. Their claims alleged

3

that Trussway violated its duties to protect their data under tort, contract, and statutory principles, entitling Plaintiffs to their losses and an order requiring Trussway to improve its data security. *See generally id.* Plaintiffs alleged those claims under a nationwide class, seeking to represent all victims impacted by the breach. *Id.* ¶ 99.

### B. Negotiation and Settlement

Given the risks that litigating this matter posed to both sides, the parties agreed to explore settlement. Doc. 18 ¶ 5. While the arm's length negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. *Id.* ¶ 6. A term sheet was agreed to on September 7, 2023, and in the weeks that followed, the parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id.* ¶¶ 7-8. In October 2023, the parties finalized terms, including the Agreement's notices and the administrator that would notify the class and process claims. *See generally id.* And although the parties negotiated Plaintiffs' service awards and attorney fees during this process, they avoided doing so until after the parties had negotiated the terms benefiting the class. *Id.* ¶ 7.

### C. The Settlement

To restate, the Settlement afforded the class four benefits, without capping their relief under any "aggregate cap" sometimes used in data breach settlements. The first benefit category was monetary relief for losses. Doc. 17-1 ("Agreement"), § 2. That included documented "ordinary losses" up to $500, including money spent on credit

4

reports, credit monitoring, unreimbursed bank fees, data charges, identity theft insurance, and other expenses incurred following the breach. *Id*. § 2.1.1. It also covered "extraordinary losses" up to $2,500, for documented and unreimbursed losses caused by identity theft or fraud. *Id*. § 2.1.2. And last, class members could claim their lost time at $75 per hour for three hours—subject to the $500 "ordinary" losses cap. To claim lost time, class members only need to attest to how they spent the time responding to the breach. *Id*.

Second, all class members could claim one year of credit monitoring and identity theft insurance. *Id*. § 2.3. That benefit included class members who had enrolled in Trussway's one-year credit monitoring program started after the breach, allowing enrolled members to extend their monitoring by one year. *Id*. This Settlement relief saves class members from buying their own monitoring and insurance plans and its cost will not impact any other benefit under the agreement, as Trussway agreed to pay it "separate and apart" from all other benefits. *Id*.

Third, Trussway agreed to implement and maintain security measures meant to address the vulnerabilities that criminals exploited to access or obtain the class's Private Information. *Id* § 2.4. This will protect the employee Private Information Trussway still possesses and guard against attempts to breach Trussway again.

And fourth, Trussway paid to administer the settlement costs and will pay any service awards and attorney fees the Court approves. *Id*. §§ 2.6, 3.2. That includes up to $102,500 for attorney fees, costs, and expenses, as well as $2,100 per Plaintiff (for a total of $4,200) for service awards. *Id*. § 7. All amounts paid under those agreements are, again, "separate and apart" from the benefits afforded to the class, meaning they will not detract

5

from what the class receives. *Id*. § 7.5. The parties agreed on these terms only after they agreed on the terms benefiting the class, ensuring they had secured the class's core benefits without considering what Plaintiffs and their attorneys would receive. *Id*. Under the agreement, Plaintiffs have petitioned the Court to approve the attorneys' fee's costs, and expenses as well as service award requests, a decision the Court will render at its final approval hearing. Doc. 21.

Last, the Agreement outlined how the parties were to notify the class, specifying how to do so and how to accept claims, opt-outs, and objections. Class members could object within 60 days by notifying RG/2 and the parties' counsel in writing about the bases for their objection, including all the information needed to process it. Agreement § 5.1. To opt-out, class members could notify RG/2 about their choice by "clearly manifesting" their intent to opt out in writing. *Id*. § 4.1. Otherwise, class members could submit claims on the claim form provided.

In exchange for any benefits, class members released Trussway from liability related to its data breach. *Id*. §§ 1.21, 6.1. But the parties tailored that release to *only* those claims arising from the breach, preserving any claims that class members may otherwise have against Trussway. *Id*.

### D. Preliminary Approval and Notice

In January 2024, Plaintiffs moved the Court to "preliminarily" approve the Agreement and implement its terms. Doc. 17. After considering the merits underlying the proposal, the Court granted Plaintiffs' motion, ordering the parties to proceed with RG/2 Claims Administration, LLC, as the Claims Administrator and issue notice to the class.

6

Doc. 20. Since then, the parties have carried out the Agreement's terms, serving settlement notices on class members and collecting their claims.

The Claims Administrator, RG/2, was charged with notifying the class and processing class member claims. *See* Sutor Dec. RG/2 has been administering settlements since 2000, including for consumer class action lawsuits like this case, administering and distributing over $2 billion in settlement proceeds. *Id*. ¶ 3. As the Claims Administrator, RG/2 was required to update contacts for class members, create a settlement website, notify the class by First Class Mail, and process claims, opt-out requests, and objections. *Id*. ¶ 2. As of May 13, 2024, RG/2 has accomplished each task.

In January 2024, RG/2 compiled 5,505 contact records for class members and sorted them through the USPS's NCOA database to ensure accuracy. *Id*. ¶ 4. It also set up the settlement website, www.rg2claims.com/trussway.html, that listed all settlement documents, claim forms, case details, and gave class members the chance to submit their claims online. *Id*. ¶ 5. RG/2 then notified the class by 5,505 mailers, requesting that they complete their claim forms and return them by mail to a designated address, providing members 60 days to opt out or object and 90 days to claim benefits. *Id*. Ex. C.

RG/2 received 881 notices returned as "undeliverable by USPS." *Id*. ¶ 9. This meant that RG/2's program reached around 84% of the class with the first mailer—speaking to the reliability of RG/2's system and the contact information provided by Trussway. *Id*. RG/2 then skip traced addresses for members whose notice was returned, identifying 530 updated addresses. *Id*. Through these efforts, RG/2 directly notified 5,143 class members, or around 93% of the class. *Id*. ¶¶ 10-11.

7

## IV.     LEGAL STANDARD

Courts approve settlements under Rule 23(e). Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). At root, the analysis centers on whether the settlement is "fair, reasonable, and adequate" *Id*. And that concept considers four factors under Rule 23(e): (i) "adequacy of representation;" (ii) whether there were "arm's length" negotiations; (iii) "adequacy of relief;" and (iv) equity between class members. *Id*. Within the third factor, "adequacy of relief," the Court considers the case's risks, how the parties propose distributing relief, attorney's fees terms, and any other agreements impacting settlement. *Id*.

These factors overlap with Fifth Circuit precedent governing the approval process. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (identifying six factors for approval). The factors consider: (i) whether there was fraud or collusion when negotiating the agreement; (ii) the case's complexity; (iii) the litigation stage and discovery taken; (iv) the risk in litigating the case; (v) the "range of possible recovery;" and (vi) whether the class, class counsel, and plaintiff recommend the settlement.

Because these factors overlap with one another, "courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159, at *26 (S.D. Tex. Sept. 5, 2019). In so doing, a district court must "keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003). That analysis does not mandate that plaintiffs maximize their

8

recovery: "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, requiring a plaintiff to maximize their recovery would defeat the point in settling, as "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978).

In other words, barring any fraud or collusion, a district court should hesitate to "substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649. The settlement here satisfies that analysis.

## V. ARGUMENT

### A. The Settlement is fair, reasonable, and adequate

The settlement is fair, reasonable, and adequate under Rule 23(e) and the *Reed* factors because it delivers relief to 5,505 current and former employees impacted by Trussway's breach *now*, rather than risk not obtaining any relief in litigation. Indeed, the settlement secures all the benefits Plaintiffs demanded when they sued Trussway: to pay for the class's losses, mitigate future losses, and eliminate the vulnerabilities leading to the breach. Depriving the class that benefit and all others on the speculative chance they may do better years from now would not serve the class's interests. For these reasons, the settlement satisfies all factors for approval.[1]

---

[1] Because the *Reed* factors overlap with the factors under Rule 23, Plaintiffs consolidate their analysis below.

9

      i.      <u>The Court should presume the settlement is "fair, adequate, and reasonable"</u>

As Plaintiffs explain above, there is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources." *Klein*, 705 F. Supp. 2d 632, 650. Further, in the "absence of any evidence to the contrary," the Court may also presume that "no fraud or collusion occurred between opposing counsel[.]" *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018).

Plaintiffs and their counsel qualify for this enhanced, "strong presumption." While the parties' arm's length negotiations were always collegial, cordial, and professional, there was no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. Doc. 18 ¶ 6. Those positions were informed by pre-mediation discovery exchanged under FRE 408, allowing Plaintiffs' counsel to understand the landscape affecting settlement. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses"). And they avoided any collusion when they insisted that the parties agree on the class's benefits before negotiating Plaintiffs' attorney fees or service award. *Id.* ¶ 7.

As a result, the parties fulfilled what Rule 23(e) and caselaw expect under this factor, entitling them to start this analysis with the "presumption of fairness."

      ii.     <u>Plaintiffs and their attorneys represented the class "adequately"</u>

Plaintiffs and their attorneys satisfy Rule 23(e)(2)(A) because they litigated the class's claims without conflict with the class and have established that they put the class's

10

interests before their own. *See generally* Doc. 22 (Borrelli Fee Dec.); *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1055 (adequacy satisfied when class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). There is also no evidence that Plaintiffs' interest conflicted with the class, as they were "typical" class members seeking the same relief as the class and they are guaranteed nothing more than the class will receive.

To reach this result, class counsel investigated the class's claims when litigating them in Court and when exploring settlement with Trussway, insisted on "informal discovery in advance of exploring settlement to ensure Class Counsel had sufficient facts and information to make an informed decision about resolution[.]" Borrelli Fee Dec. ¶ 5. Thus, counsel had a "full understanding of the legal and factual issues surrounding this case" when agreeing to explore settlement. *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). And that work preceded counsel's efforts in "mediating the dispute, review[ing] 'confirmatory' discovery, draft[ing] the settlement agreement and exhibits, prepar[ing] and submit[ing] the Motion for Preliminary approval (which was ultimately granted), and implement[ing] the parties' settlement[.]" Borrelli Fee Dec. ¶ 5. For these reasons, Plaintiffs have satisfied the "adequacy" factors.

   iii. <u>This case's risks, complexity, and expense justify settlement at this stage</u>

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). And this case is not only

"complex"—"it lies within an especially risky field of litigation: data breach." *Desue v. 20/20 Eye Care Network*, Inc., No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at \*24 (S.D. Fla. July 8, 2023). This is why courts favor settling breach cases. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at \*6 (W.D. Ky. Aug. 23, 2010). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Although Plaintiffs believe their claims are strong and that they would have overcome the hurdles of a motion to dismiss, class certification, dispositive motion briefing, and trial, given the challenges faced in any complex litigation (which are even more acute in the developing area of data breach), the risks that justified settling at the stage Plaintiffs did. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("Settling now avoids the risks and burdens of potentially protracted litigation.").

And although the parties have settled this matter without "formal" discovery, that is no bar to settlement. *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999) (The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed."). Again, the settlement achieves what Plaintiffs wanted in their complaint—compensation for the class's losses, protection

12

against future risk, and a requirement that Trussway improve its security. There is no reason to risk losing recovery entirely by refusing to settle on those terms.

    iv.    <u>Class counsel recommends the settlement</u>

The Court should consider class's counsel opinion on settlement because "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."). As class counsel explains by declaration, they understand how data breach cases work and the factors to consider when litigating them. Doc. 18 ¶¶ 9-14. They also understand how the relief secured here exceeds that achieved in other cases. *Id*. ("Of the various forms of relief available in national consumer protection class actions (injunctive, declaratory, coupons, gift cards, cash compensation, etc.), the relief obtained by Class Counsel in this case is of the most preferable form: remedial relief plus cash compensation."). The Court should accept this judgment when weighing the approval. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'"). As a result, Plaintiffs satisfy this factor.

    v.    <u>The method for delivering relief supports approval</u>

If the Court approves the settlement, RG/2 will pay verified claims and facilitate enrollment in credit monitoring as requested by the class. Given that RG/2 has experience

in delivering relief like this—including over $2 billion in cash payments to consumers, Plaintiffs trust that the class will receive what they qualify for under the settlement.

    vi.    <u>The settlement treats class members "equitably"</u>

Plaintiffs satisfy the factor under Rule 23(e)(2)(D) because all class members are treated "equitably." RG/2 notified all class members using the same methods, reaching 93% of them and affording them the same options. And although their recoveries may vary in amount, that does not render the relief "inequitable," as it compensates them for their "relative" losses. *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 U.S. Dist. LEXIS 204744, at *30 (W.D. Tex. Aug. 26, 2021) (approving a settlement that award differing recoveries based on a formula that considered class member's "relative" losses). What's more, the relief is "adequate" because there is no cap on what Trussway must pay under the Agreement, meaning Trussway will pay every verified claim in full.

    vii.    <u>Class members have not objected to the settlement</u>

As RG/2 explains by declaration, no class members opted out or objected to the settlement—speaking to the positive response to it. As a result, the Court should find this factor supports settlement.

**A. The Court should finally certify the settlement class**

Settlement classes are routinely certified in consumer data breach cases. There is nothing unique about this case that would counsel otherwise. This Court already found when it preliminarily approved the Settlement that it likely would certify the class. The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which

14

to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes. Where nothing has changed relative to the Rule 23(a) and pertinent Rule 23(b) factors since preliminary approval, that decision should be made final, for the reasons set forth in the Plaintiffs' Preliminary Approval Motion and Supporting Memorandum. *See* Doc. 20.

### B. The Notice Plan Complied with Rule 23 and Due Process

The Court should approve the notice plan because the parties directed "notice in a reasonable manner" under Rule 23. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. *Id*. "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Windsor*, 521 U.S. 591, 617. Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B).

Having notified 93% of class members with the details demanded by caselaw, the notice program satisfied this prong. The parties used First Class Mail to alert class members to the settlement, a recognized notice method. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class

15

mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed class members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed class members to easily find any section that they may be looking for. Thus, it was substantively adequate.

RG/2 also set up a website for class members to review all case documents and review the settlement's details, ensuring they could claim benefits with ease. This effort exceeds what Plaintiffs must show to carry their burden on the due process prong. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

## VI.   CONCLUSION

For the reasons above, the Court should enter an order finally approving the parties' settlement, certifying the class for purposes of judgment on the Settlement, and granting Plaintiffs' request for attorneys' fees, costs, and service awards.

Dated: May 15, 2024               Respectfully Submitted,

                                              By: *Raina C. Borrelli*
                                                    Raina C. Borrelli (*pro hac vice*)
                                                      STRAUSS BORRELLI PLLC
                                                      One Magnificent Mile
                                                      980 N Michigan Avenue, Suite 1610
                                                      Chicago IL, 60611
                                                      Telephone: (872) 263-1100
                                                      Facsimile: (872) 263-1109

                                                      Joe Kendall
                                                      KENDALL LAW GROUP PLLC
                                                      3811 Turtle Creek Blvd., Suite 1450
                                                      Dallas, TX 75219
                                                      Telephone: (214) 744-3000
                                                      Facsimile: (214) 744-3015
                                                      jkendall@kendalllawgroup.com

                                                  *Attorney for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on May 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 15th day of May, 2024.

                        STRAUSS BORRELLI PLLC

                By: */s/ Raina C. Borrelli*
                      Raina C. Borrelli
                      raina@straussborrelli.com
                      STRAUSS BORRELLI PLLC
                      One Magnificent Mile
                      980 N Michigan Avenue, Suite 1610
                      Chicago IL, 60611
                      Telephone: (872) 263-1100
                      Facsimile: (872) 263-1109